UNITED STATES DISTRICT COURT

FILED
IN CLERKS OFFICE

2005 OCT -3  P 4: ??

U.S. DISTRICT COURT
DISTRICT OF MASS

)
)
)
BAHIG F. BISHAY                                              )
    Claimant                                              )
)
v.                                                          )
AMERICAN ARBITRATION ASSOCIATION,     )     05CV 11771 NMG
    Dispute Resolution Services Worldwide;          )
)
and                                                         )
)
BRIGHTON AVENUE ASSOCIATES, LLC            )
    Respondent                                          )
_____)

## DEFENDANT BRIGHTON AVENUE ASSOCIATES, LLC'S MEMORANDUM IN SUPPORT OF THE DEFENDANT  BRIGHTON  AVENUE ASSOCIATES, LLC'S MOTION TO DISMISS PLAINTIFF BAHIG F. BISHAY'S APPLICATION-COMPLAINT PURSUANT TO U.S. ARBITRATION ACT-TITLE 9

The Defendant/Respondent Brighton Avenue Associates, LLC submits this

memorandum in support of the Defendant Brighton Avenue Associates, LLC's Motion to

Dismiss the Plaintiff Bahig F. Bishay's Application-Complaint Pursuant to U.S.

Arbitration Act-Title 9.  ("Motion to Dismiss")

### I.     Introduction

On August 26, 2005, the Plaintiff/Claimant Bahig F. Bishay ("Bishay") filed a

document with the Federal District Court for Massachusetts entitled Application-

Complaint Pursuant to U.S. Arbitration Act- Title 9  ("Application-Complaint").  A

virtually identical pleading was filed on August 31, 2005, by Bishay in Suffolk Superior

Court as Civil Action No. 05- 3746-F ("Superior Court Action") entitled Application-

1

Complaint Pursuant to U.S. Arbitration Act Title 9 & M.G.L. Chapter 251, Section 12 and 15. That action is currently pending. The Defendant/Respondent Brighton Avenue Associates, LLC, ("BAA") has served a motion to dismiss the Superior Court Action on various grounds, some of which are reiterated in the Motion to Dismiss in this action.

BAA submits that this Court should dismiss the Application-Complaint on grounds that this matter does not fall within the subject matter jurisdiction of this Court, and that the subject matter of Bishay's claims should be resolved in the Superior Court Action. Moreover, even if this Court were to hold that it has subject matter jurisdiction over this matter, there are a variety of reasons both at the federal and state level, depending on which substantive law is applied, to dismiss this claim.

## II. Facts

Bishay was an interested party to a Purchase and Sale Agreement ("Agreement") dated January 12, 2001 concerning the purchase of certain commercial real estate in Brighton, Massachusetts. BAA was the buyer. The Agreement contained a formula in paragraph 20 that enabled Bishay to earn up to a 25% equity interest in BAA if certain contingencies were met. The Agreement further provided in paragraph 22 that BAA would pay Bishay five million dollars ($5,000,000.00) in the event that BAA obtained final permits to either build more than 200 apartment units, or add an additional 250,000 square feet of commercial space at the subject site.

Subsequent to entering into the Agreement, a dispute between Bishay and BAA arose as to whether Bishay was entitled to any equity interest in BAA pursuant to paragraph 20 of the Agreement, and whether Bishay was entitled to the five million dollars ($5,000,000.00) pursuant to paragraph 22 of the Agreement. There is no dispute

2

that the Agreement provided that any dispute between Bishay and BAA regarding paragraphs 20 and 22 would be resolved by arbitration through the American Arbitration Association ("AAA"), and its Commercial Arbitration Rules ("Rules").

In or around August of 2003, Bishay filed a Demand for Arbitration, and the dispute between BAA and Bishay was in fact submitted to arbitration. Three (3) arbitrators were duly appointed. The arbitrators, all attorneys, were: Carla S. Cox, Charles J. Speleotis, and Paul Peter Nicolai (collectively the "Panel"). While Bishay has filed this Application-Complaint pro se -- BAA submits for obvious reasons --, Bishay was represented during the arbitration proceedings by two (2) skillful and experienced attorneys. Subsequent to the commencement of the arbitration, the Panel bifurcated the two (2) claims, holding separate hearings for the paragraph 20 and paragraph 22 claims. Each claim had multiple days of hearings. The Panel issued two separate awards reflective of the two separate issues. The awards were unanimous in each instance.

The first award, entitled "INTERIM AWARD OF ARBITRATORS ON CLAIM UNDER PARAGRAPH 20 OF THE PARTIES' CONTRACT ("Interim Award"), which dealt with the issue of whether Bishay was entitled to any equity interest in BAA pursuant to paragraph 20 of the Agreement, was issued in *favor* of Bishay by the Panel on or about January 12, 2005. (See Exhibit B to Application-Complaint.) The Panel in the Interim Award held that Bishay was entitled to 2.8 % of BAA (although Bishay sought a 25% interest), while BAA had argued that Bishay was not entitled to any earned equity interest in BAA. The Interim Award also required BAA to pay Bishay certain sums representing his share of the net distributions to members made in 2002 and 2003. The Interim Award also entitled Bishay to future distributions as well. The Interim Award

3

further required that BAA pay Bishay additional sums representing Bishay's share of amounts paid or due to AAA. There is no dispute BAA fulfilled its monetary obligations pursuant to the Interim Award. While said Interim Award was issued in January 2005, Bishay never contested this award until he filed the Application-Complaint.

Months after the issuance of the Interim Award, on May 16, 2005, the hearing began concerning the claim to five million dollars ($5,000,000.00) due to Bishay from BAA in the event certain building permits were issued (which they never were) pursuant to paragraph 22 of the Agreement. After six (6) days of hearings, a second award was issued by the Panel on or about June 16, 2005. This award was entitled "FINAL AWARD OF ARBITRATORS" " ("Final Award") (See Exhibit F of Application-Complaint). In the Final Award, the Panel found unanimously in favor of BAA, and held that Bishay was not entitled to any monies pursuant to paragraph 22. The Interim Award that was previously issued in favor of Bishay was incorporated into the Final Award (collectively, the "Award").

On or about August 26, 2005, some seventy- one (71) days after the issuance of the Final Award, Bishay filed the Application-Complaint. The sole basis of the Application-Complaint is Bishay's claim in paragraph 3 of the Application-Complaint that Arbitrator Carla S. Cox's signature "... after recent examination is determined to be a different handwriting ... [then her signature on other documents]." Bishay states in paragraph 3 of the Application-Complaint:

> ... the stark disparity between Cox's apparently authentic signatures reflected in Exhibits: A, B, C, D and E, on one hand, and the signature purported by Dubois [American Arbitration Association's case manager] to be Cox's signature, which appears in Exhibit F, herein, on the other hand -- noting that Exhibit F represents the most significant Award in the case, which Bishay expected would exceed $5.0 million in cash assessed

4

> against the Respondent - now begs the inescapable conclusion that Cox's
> purported signature affixed to the Final Award dated June 16, 2005,
> reflected in Exhibit F herein, is indeed not Cox's signature; and Exhibit F
> is accordingly presumed not to be Cox's Final Award. Bishay, therefore,
> submits that corruption, fraud and undue means have adequately been
> established herein ..."

Bishay offers no evidence that the signature in question is not that of Ms. Cox or

is a forgery (for example, an opinion of a handwriting specialist), nor any evidence that

the signature, if not that of Ms. Cox, was not signed with her authority and on her behalf.

Bishay also does not allege that the Final Award is not in fact the decision of the Panel.

BBA submits that Bishay's claim is not only without merit, but also is frivolous and an

absurdity.

## III.    Argument

### A.    The federal court does not have subject matter jurisdiction over this matter, and so it should defer to the state court where an identical proceeding is pending.

The Federal Courts have subject matter jurisdiction pursuant to the Federal

Arbitration Act ("FAA") under a limited number of circumstances, namely, where there

exists a case or controversy between citizens of different states (28 U.S.C. §1331) or

where there is a case or controversy arising under the Constitution and laws of the United

States (28 U.S.C. §1332). "The Court has jurisdiction of the plaintiff's actions invoking

the FAA. Such an action may be brought in federal court so long as there is an available

source of federal jurisdiction: either federal question jurisdiction, 28 U.S.C. § 1331, or

diversity of citizenship jurisdiction, 28 U.S.C. § 1332." Kiewit/Atkinson/Kenny v.

International Brotherhood of Electrical Workers, Local 103, 43 F.Supp. 132, 135

(D.Mass. 1999). There is no diversity of citizenship in this action as Bishay is a resident

5

of Massachusetts, and BAA is a duly organized Massachusetts limited liability company doing business exclusively in Massachusetts. BAA is in essence a single purpose entity that owns a parcel of real estate in Boston (Brighton), Massachusetts. Even if the American Arbitration Association is a New York entity, and not a Massachusetts entity, it is well established that there must be "complete" diversity of the parties to sustain diversity jurisdtion.[1]

Nor is there any federal question involved, as Bishay has not alleged a breach of any federal law, nor is there one. The underlying case which was arbitrated was based on a claim of breach of contract concerning a contract which was entered into and performed in Massachusetts, regarding real estate located in Massachusetts. Moreover, the existence of subject matter jurisdiction must be demonstrated at the outset by the party seeking to invoke it pursuant to Fed.R.Civ.P. 8, and Bishay has not done this. Additionally, it is well established that the FAA, by itself, does not provide independent basis for federal court to exercise subject matter jurisdiction. "Jurisdiction in this case does not derive from the FAA, which does not provide an independent basis for subject matter jurisdiction..." New England Utilities v. Hydro-Quebec 10 F.Supp.2d 53, 59 (D.Mass. 1998) .

In fact, the FAA, which Bishay relies on, would only be applicable by this Court if there was complete diversity of citizenship between the parties or a federal question, and if the dispute involved interstate commerce. "Arbitration provisions included in a

---

[1] See, e.g., American River & Finishing, Inc. v. Tyco Healthcare Group, LP, 362 F.3d 136, 139 (1st Cir. 2004) ("We begin with the abecedarian rule that there must be complete diversity among the parties to sustain diversity jurisdiction"). See, also, Faretra v. Keith, 2005 WL 1307708 (D. Mass. 2005) ("When a plaintiff sues more than one defendant in a diversity action, the plaintiff must meet the requirements of the diversity statute for *each* defendant or face dismissal" quoting Newman-Green, Inc. v. Alfonso-Larrain et al, 490 U.S. 826, 829, 109 S.Ct. 2218, 104 L.Ed. 893 (1989)) (emphasis original)

6

contract 'evidencing a transaction involving commerce' are governed by the Federal

Arbitration Act. 9 U.S.C., § 2  The Courts have held that the term 'commerce' in this

provision [section 2] of the Act refers to interstate or foreign commerce and is to be

broadly construed  Societe Generale de Surveillance, S.A. v. Raytheon European

Management & Sys. Co., 643 F.2d 863, 867 (1st Cir.)."  Corion Corporation v. Gih-

Horng Chen, 1991 WL 280288 (D. Mass. 1991) at *3.   However, as the arbitration

involves a simple contract case with only Massachusetts connections, there is no

evidence that there was any interstate commerce, nor has Bishay presented any.

Even under the broad and expansive interpretation of "interstate commerce" as

used by the Supreme Court in Citizens Bank v. Alafabco, Inc. 123 S.Ct. 2037 (2003),

there is no argument that any interstate commerce was involved in the transaction

between Bishay and BAA. In Alafabco, the court said that "[w]e found the term

'involving commerce' in the FAA as the functional equivalent of the more familiar term

'affecting commerce' --words of art that ordinarily signal the broadest permissible

exercise of the Congress's Commerce Clause power."  Id . at 2040. [2]  Alafabco involved

loan agreements between Citizens Bank and Alafabco, a fabrication and construction

company.  Even though the debt restructuring contracts were executed in Alabama by

Alabama residents, the Court found that the transaction satisfied the "affecting

---

[2] The court in US. v. Capozzi 347 F.3d 327, 335 (1st. Cir. 2003) while discussing the United States Supreme Court 's decsion in United States v. Lopez 514 U.S. 549, 115 S.Ct. 1624 (1995) which struck down a Gun Free School Zone Act discussed the tripartite criteria used by the Court in Lopez to demarcate those activities that Congress may regulate under the Commerce Clause authority.  According to the court in Capozzi "in declaring the statute unconstitutional, the court identified three categories of conduct which Congress may regulate under its Commerce Clause authority: (1) the use of channels of interstate commerce; (2) the instrumentalities of interstate commerce or persons or things in interstate commerce; and (3) activities that substantially affect interstate commerce ...  Applying this test, the Court invalidated the Act because the 'possession of a gun in a local school zone, is in no sense an economic activity that might, through repetition elsewhere, substantially effect any sort of interstate commerce." Id at 567, 115 S.Ct. 1624

commerce" test, because: (1) Alafabco was engaged in business through the southeastern United States, using loans from Citizens Banks outside Alabama ;(2) the restructured debt was secured by all of Alafabco business assets, including its inventory of goods assembled from out of state parts and raw materials; and (3) if the "extortionate credit" practices were considered as a "general practice" the impact on interstate commerce could be significant, because of the special nature of interstate banking.

None of these criteria are present here concerning the transaction between Bishay and BAA, which is the subject matter of the arbitration dispute. Bishay is an individual who is a resident of Massachusetts, and BAA is a Massachusetts limited liability company. The contract out of which this dispute arose was signed in Massachusetts, and concerns real estate located in Massachusetts. BAA operates and conducts business exclusively in Massachusetts. The dispute arose over the interpretation of several paragraphs of a purchase and sale agreement involving real estate located in Massachusetts between parties domiciled in Massachusetts, so it is difficult to see how the parties underlying dispute could have an affect on interstate commerce.

Moreover, even if all three of the aforementioned prerequisites exist, the FAA would be applicable only insofar as the Massachusetts statute governing arbitration interfered with or undercut the federal pro-arbitration policy, and there is absolutely no evidence, nor has Bishay asserted any, that the Massachusetts statute governing arbitration does this. "[T]he Supreme Court has interpreted the Federal Arbitration Act as a rule of substantive law applicable in both federal and state courts to transactions involving interstate commerce, which is 'intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements.' Southland Corp v. Keating, 465

8

U.S. 1, 14-16, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984)" Coady v. Ashcraft & Gerel, 996
F.Supp. 95, 100 (D.Mass.1998). See, also, New England Energy Inc. v. Keystone
Shipping Company, 855 F.2d 1, 5 (1st. Cir. 1988) ("At best, the Supreme Court's
decisions support a conclusion that all state laws seeking to *limit* the use of the arbitral
process are superseded by federal law. None of various preemption standards suggests
that Congress intended the Federal Act to supercede all state arbitration law ...")

## B.    The Application-Complaint fails to state a claim upon which relief can be granted.

It is well established in the law of the federal courts that that a complaint must be
dismissed if it fails to state a claim upon which relief can be granted. "'In appraising the
sufficiency of a complaint, we follow, of course, the accepted rule that a complaint
should not be dismissed for failure to state claim unless it appears beyond doubt that the
plaintiff can prove no set of facts in support of his claim that would entitle him to
relief.' Conley v. Gibson, 335 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)"
Ballou v. General Electric Company, 393 F.2d 398, 399 (1st. Cir. 1968). Even, if the
allegations, are true; namely, that the signature of Carla S. Cox on the Final Award is
"different" than her other signatures that are "apparently authentic," that would not
change the outcome of the case, because a only majority vote of the arbitrators and not
unanimity is necessary to render an award, and, in fact, only a majority and not all of
the arbitrators are required to sign an award. The rules applicable to the arbitration
proceeding at issue were the Commercial Arbitration Rules of the American Arbitration
Association ("Rules") rules R-1 through R- 54, and, because the dispute involved a
claim in excess of five hundred thousand dollars ($500,000.00), the procedures were

9

the Procedures For Large, Complex Commercial Disputes ("Procedures") sections L-1

through L-4 were also applicable. Rule R-40 entitled "Majority Decision" states:

> When the panel consists of more than one arbitrator, unless required by
> law or by the arbitration agreement, a majority of the arbitrators must
> make all decisions.

Rule R-42 entitled "Form of Award" states:

> (a) Any rule shall be in writing and signed by a majority of the arbitrators.
> It shall be executed in the manner required by law

Bishay does not allege that the signatures of the other Arbitrators are "different."

Moreover, he presents no evidence to support his thesis that the signatures of any of the

other Arbitrators are "different," he merely states in paragraph 11 of his Application-

Complaint that "... Bishay expects the same perpetrator who prepared and signed Cox's

Final Award also prepared and signed either Speleotis' Award or Nicolai's Award, or

both." (emphasis added) Such an oblique reference regarding his "expectations" based on

unfounded suspicions without justification, hardly qualifies as an allegation, which is by

definition a statement of a claimed fact, and therefore the Application-Complaint should

be dismissed.

In essence, all Bishay has alleged is that the signature of Ms. Cox appears

different on one of the documents, and may not be authentic. Given the very explicit

requirements of the Rules, that only requires a majority vote, and only require a majority

of signatures on an award, Bishay has not alleged sufficient facts to support a "claim"

upon which relief can be granted. Even if, for the sake of argument, we assume that

Bishay's improbable allegation regarding Ms. Cox's signature is true, that fact alone is not

sufficient to make out a cause of action under the laws of the Commonwealth, because

Bishay has not made any similar allegations regarding the signatures of either of the other

10

two Arbitrators -- only a reference by innuendo as to what he "expects" one might find, without a shred or iota of evidence to support this expectation. Since his allegation is only that one of Ms. Cox's signatures is "different" and may not be authentic, and not that two of the arbitrator's signatures are forgeries, there is no set of facts that could be proven in support of this "claim," that could entitle Bishay to relief.

Moreover, nowhere does Bishay allege the Final Award does not in fact reflect the actual unanimous or majority decision of the Panel.

## C.  The Application-Complaint does not allege fraud with specificity as required by the federal rules of civil procedure.

Bishay has not stated any facts in his Application-Complaint, which support a claim of "corruption, fraud, or undue means." The facts to support such a claim were not asserted, because they do not exist. Under the law of the federal courts "fraud" must be alleged with specificity. Fed.R.Civ.P. 9 (b) states that in "all averments of fraud, mistake thee circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." It appears that since Bishay refers in paragraph 12 to "corruption, fraud, and undue means" he is in essence alleging that the Award must be vacated based on "fraud." However, Bishay's Application-Complaint is, on its face, devoid of allegations of facts sufficient to make out a claim of fraud with particularity.

Bishay's only allegation, or statement of claimed fact, is that there is dissimilarity between the signatures representing to be the signatures of arbitrator Carla S. Cox. He presents no affidavit by Carla S. Cox, unquestionably the best source of the authenticity of her signature, attesting that the signature at issue is not hers, and disavowing the Final

11

Award; no handwriting expert analysis is presented; and no rational explanation as to

why evidence of one forgery (even if true), and not two, is grounds for vacating an

arbitration award made by three arbitrators, when the Rules require only a majority vote

to render an outcome. Since Carla S. Cox is presumably available, Bishay's Application-

Complaint begs the question of where is an affidavit signed by her confirming that it is

not her signature and objecting to the Final Award? Even if the signature appears

different, many individual signatures can vary substantially. Where is the expert hand

writing analysis to discount this possibility? None of these obvious "particular" indicia

of fraud are provided by Bishay to assist in making out a claim of fraud with

particularity. Even if Ms. Cox did not actually sign the decsion in question but in fact

authorized another to sign her name to a document she reviewed and approved, this

would not be fraud.

In sum, where are there any facts alleged with specificity sufficient to make out a

claim of fraud? All Bishay offers is innuendo, or a personal opinion, or conjecture that if

one of Carla S. Cox's signatures is dissimilar than he "expects" something must be wrong

with the signatures of the other arbitrators as well. As quoted previously, in paragraph

11 of the Application-Complaint Bishay states, "[w]hile the most obvious bogus award is

Cox's, Bishay expects that the same perpetrator who prepared and signed Cox's final

Award also prepared and signed either Speleotis' Award or Nicolai's Award, or both,

which re [sic] annexed hereto as Exhibits G and H." There are absolutely no facts to

support such an assertion. The Court in  Driscoll v. Landmark Bank for Savings, 758

F.Supp. 48, 51  (D.Mass. 1991) stated "[a]llegations in the form of mere conclusions,

accusations, or speculations are not sufficient to meet Rule 9(b)'s particularity

requirement without supporting facts surrounding the scheme to defraud or a basis for believing such a scheme existed. See id.; Wayne, 759 F.2d at 14 ('purely speculative allegations of fraud' are not sufficient under Rule 9(b)')" Id. at 51. The Court in Driscoll further stated, citing Dileo v. Earnest & Young, 901 F.2d 624, 627 (7th Cir.. 1990) that "[r]ule 9(b) requires the 'circumstances' constituting fraud to be plead with detail; this means 'the who, what, when, where, and how.'" Id. at 52. Here, Bishay offers nothing regarding the identity of the person perpetrating the fraud, other than to claim that it is some "perpetrator." Nor does he provide when and where it was done other than to suggest in paragraph 10 of his Application-Complaint that the authentic Awards "are not the same Awards delivered to Bishay by AAA's Case Manager Paula C. Dubois." Apparently aware of how totally baseless his allegations are, Bishay does not even dare accuse BAA of perpetrating the fraud, the most obvious beneficiary of the purported fraud, and, in fact, throughout the entire Application-Complaint the name BAA is scarcely mentioned.

## D.    Commencement of action was untimely.

Although the Federal Arbitration Act under Title 9 U.S.C. § 12 permits a party ninety (90) days to file motion to vacate an arbitration award, the Massachusetts arbitration law G.L. c. 251, § 12(b) provides that "an application under this section [to vacate an arbitration award] shall be made within thirty days after delivery of a copy of the award to the applicant, but, if such application is predicated upon corruption, fraud, or other undue means, it shall be made within thirty days after such grounds are known or should have been known." The Final Award, which Bishay claims contains a different

13

signature by Carla S. Cox, was issued on June 16, 2005, approximately *seventy-one (71) days prior* to the filing of the Application-Complaint by Bishay on August 26, 2005.

Because the arbitration agreement between Bishay and BAA did not provide for a choice of law, the court must adopt the Massachusetts rule, because the Massachusetts rule is not subject to preemption by the FAA, nor would the FAA rule apply under the choice of law analysis. "While the FAA has some preemptive force, it does not entirely displace state arbitration law. 'The FAA contains no express preemptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration' Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 477, 109 S.C. 1248, 103 L.Ed.2d 488 (1989)" New England Utilities v. Hydro-Quebec 10 F.Supp.2d 53, 59 (D.Mass. 1998). Moreover, in lengthy exegesis on the applicability of state rules regarding time limitations the court in New England Utilities, case involving Massachusetts law, stated a number of reasons for respecting state rules regarding time limitations, including the fact that "preemption" was limited to those instances in which state law arbitration rule "interferes with the FAA's pro-arbitration policy." Id. at 59. The court stated:

> The FAA does not preempt provisions of state arbitration law that set time limits on motions to vacate. See Ekstrom v. Value Health, Inc., 68 F.3d 1391, 1395-96 (D.C.Cir. 1995) (holding that Connecticut 30-day provision "'surely does not conflict with the FAA's ' primary purpose'") (quoting Volt, 489 U.S. at 479, 109 S.Ct. 1248). The First Circuit, in cases involving disputes over the applicability of the FAA's timeliness provision, has not even referred to preemption in resolving conflicting rules. See Posadas de Peurot Rico Assocs.. Inc. v. Asociacion de Empleados de Casino 873 F.2d 479, 484-85 (1st. Cir. 1989) (applying 30 - day Peurot Rico rule with respect to arbitration in a Labor Management Relations Act Dispute after conducting federal choice of law analysis) ... *As a policy matter, since the state's different vacateur time limit does not interfere with the FAA's pro-arbitration policy, it follows logically that the FAA does not preempt state law on this basis.*(emphasis added)

14

New England Utilities v. Hydro-Quebec 10 F.Supp.2d 53, 59 (D.Mass. 1998)

Moreover, even if the court were to determine that it had jurisdiction under diversity grounds, this would require the court to apply choice of law of the forum state. "A federal court sitting in a diversity case must apply the choice of law rules of the forum state." New Ponce Shopping Ctr. v. Integrated Assurance Co. 86 F.3rd 265, 267 (1st. Cir. 1996). Massachusetts analyzes choice of law problems using a "functional approach." Bushkin Assocs., Inc. v. Raytheon Co., 393 Mass. 622, 631-632 (1985). The functional approach applies with equal force to choices of statutes of limitations. See New England Tel. & Tel. Co. v. Gourdeau Constr. Co., 419 Mass. 658, 664 (1995) (holding that the Massachusetts courts are free "to apply the statute of limitations of another jurisdiction in particular circumstances.") Among the factors taken into account under the Bushkin analysis are the (a) place of contracting; (b) the place of negotiating of the contract; (c) the place of performance of the contract; (d) the domicile, residence, nationality, place of incorporation and place of business of the parties; (e) the needs and interests of international states; (f) the relevant policies of other interested states; (g) the protecting of justified expectations; (h) certainty, predictability, and uniformity of result; (i) ease in determination and applicability of the law to be applied. Bushkin Assocs., Inc. v. Raytheon Co., 393 Mass. 622, 631-632 (1985). Since the contract was negotiated in Massachusetts, for sale of real estate located in Massachusetts, by parties that were domiciled in Massachusetts, there is no question that Massachusetts and not federal law should apply.

There is no plausible explanation as to why Bishay did not discover the alleged "different handwriting" earlier, because he (or at least his counsel) received the Final

15

Award on or about June 16, 2005, a full seventy-one (71) days before he filed his

Application-Complaint with the court. Nor does Bishay even offer such an explanation.

Presumably he, or at least his counsel, could have reviewed all the signed documents

referred to in the Application-Complaint within days of the June 16, 2005 Award. There

is no reason why the "recent examination" could not have occurred within thirty (30)

days. In reality, it probably took Bishay seventy-one (71) days to dream up his novel

"theory."

## E.    Service of process was insufficient.

If the court is inclined to agree that the Massachusetts arbitration statute must be

applied, than in addition to being untimely filed, Bishay's service of process was

insufficient. G.L. c. 251, § 15 reads as follows:

> Section 15. Except as otherwise provided, an application to the court
> under this chapter shall be by motion and shall be heard in the manner and
> upon the notice provided by law or rule of court for making and hearing of
> motions. Unless the parties have agreed otherwise, notice of an initial
> application for an order shall be served in the manner provide by law for
> the service of an original writ of summons.  (emphasis added)

BBA contends that Bishay's service of process insufficient, in that it was performed by

delivering a copy of the Application-Complaint to BAA's counsel for the arbitration

proceeding: no attempt was made to deliver a copy of a summons and complaint " ... to

an officer, to a managing or general agent, or to the person in charge of the business" of

BAA or to an agent authorized by appointment, as would be required if service was done

"in the manner provided by for the service of an original writ of summons" pursuant to

Mass.R.Civ.P. 4(d)(2), or Fed.R.Civ.P. 4(h)(1).  Moreover, BAA and Bishay never

16

agreed, as the exception provided by the statute permits, that service could be performed in a manner other than the "manner provided by law for service of an original writ of summons." In addition to the fact that BAA never agreed that its counsel could accept service on its behalf, BAA's counsel, himself, was never asked by Bishay if he would accept service for BAA, nor did he ever agree to accept such service for BAA prior to the delivery to him of a copy of the Application-Complaint by Bishay.

Given the fact that the filing of the Application-Complaint was not only untimely, but that its service of process was also insufficient, it is only appropriate that the Court dismisses Bishay's Application-Complaint. The decision to dismiss an action for insufficient service of process or to instead quash service rests within the discretion of the motion judge. Ward v. McMahon, 2002 Mass.App.Div. 115 (2002) at *2.

## F.     Bishay seeks relief not authorized by either the Massachusetts statute governing arbitration or the Federal Arbitration Act.

As a final matter, the Court should note that Bishay in the section entitled "Prayer For Relief" of his Application-Complaint requests the Court to "[s]chedule either a bench or jury trial before this court, to resolve the subject contract dispute originally assigned to AAA;..." Nowhere in G.L. c. 251, §§ 1-17, the Massachusetts statute governing arbitration, or in 9 U.S.C., § 10 of the FAA, under whose authority Bishay filed the Application-Complaint, does the statute authorize a judge to vacate an award, and assign it to a "bench or jury trial" as requested by Bishay. The authorized procedure under the state statute or the FAA would be to put the matter down to be heard by "new arbitrators chosen as provided in the agreement" pursuant to G.L. c. 251 § 12 (c) or a "rehearing by

17

the arbitrators" as provided by Federal Arbitration Act Tile 9 U.S.C., § 10 (a) (5). Even

if Bishay had a viable action, which he does not, the relief he requests is not permitted.

## IV.    Conclusion

For the reasons set forth above, the Defendant/Respondent Brighton Avenue

Associates, LLC respectfully requests that the Plaintiff/Claimant Bahig F. Bishay's

Application-Complaint Pursuant to U.S. Arbitration Act Title 9 be dismissed.  BAA

further requests that the Court issue sanctions against Bishay for his filing of the frivolous

action.


                                        Brighton Avenue Associates, LLC.
                                        The Defendant/Respondent,
                                        By its attorney


                                        James S. Singer, Esq.
                                        B.B.O. #464560
                                        Rudolph Friedmann LLP
                                        92 State Street
                                        Boston, MA 02109
Dated: September ___, 2005              (617) 723-7700


## CERTIFICATE OF SERVICE

I, James S. Singer, counsel for the Defendant/Respondent Brighton Avenue Associates,
LLC hereby certify that a true copy of the above document was served upon each party
appearing pro se and the attorney of record for each other party by mail on
October ___, 2005

                                        James S. Singer


18